Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

No. Civ. 96–2123 RCL.

United States District Court,
District of Columbia.

May 4, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

**14**

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for Anthony Marceca.

Patricia Russotto, U.S. Department of Justice, Civil Division, Washington, D.C., for United States Secret Service.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Motion of the United States Secret Service to Modify Subpoena and Motion of the United States Secret Service for Protective Order. On January 9, 1998, plaintiffs served a subpoena and notice for deposition on the United States Secret Service ("Secret Service") seeking information regarding the disclosure of Federal Bureau of Investigation ("FBI") files that are the subject to the underlying lawsuit. Presently, the Secret Service moves this court to modify to the subpoena duces tecum at issue and for protective order. Upon consideration of the submissions of the parties and the relevant law, the motions of the Secret Service are granted in part and denied in part.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the administrations of Presidents Reagan and Bush. Plaintiffs further aver that the requests for the files came from Bernard Nussbaum, David Craig Livingstone, and Anthony Marceca, who were allegedly acting outside the scope of their employment and at the request of defendant Hillary Rodham Clinton. Plaintiffs allege that these actions were taken for partisan political purposes in order to obtain potentially embarrassing and damaging information on former Reagan and Bush administration personnel.

On January 9, 1998, plaintiffs served a subpoena on the Secret Service seeking documents and testimony of persons with knowledge concerning this case. In essence, the subpoena served by plaintiffs requests five distinct types of information: (1) records, notes, communications, or other documents produced pursuant to congressional subpoena, grand jury subpoena, or any voluntary agreement with the Department of Justice or other investigatory agency of the United States, including the Office of the Independent Counsel, concerning or relating to the disclosure to White House personnel or to other persons in the White House, of FBI background investigation files or summary reports on former appointees and employees of the administrations of Presidents Reagan and Bush and copies of any subpoena(s) or voluntary agreement(s) pertaining to these documents (requests 1 and 2); (2) records, correspondence, notes, communications, or other documents concerning or relating to communications to or from numerous officials concerning or relating to the access to and disclosure of FBI background investigation files or summary reports on former appointees and employees of the administrations of Presidents Reagan or Bush (request numbers 3–18); (3) records, correspondence, notes, communications, or other documents concerning or relating to any matters in the complaints of this case which were removed from the premises of the United States Government, including but not limited to, the White House, the Department of Justice and/or the FBI before, during, or after the deponent's employment with the United States (request number 19); (4) all records, correspondence, notes, communications, tapes, cassettes, or other documents concerning or relating to the system of recording devices, whether audio or video, used to record sounds, pictures in any office, common, and/or other areas of the White House, and the entirety of the Executive Office of the President ("EOP") and all such documents and recordings concerning or relating to the

system for controlling access to the White House by any official, employee, detailee, resident, volunteer, intern, visitor, or guest (request numbers 20 and 21); and (5) any and all documents and things which refer or relate in any way to the matter commonly known as "Filegate."

By agreement of counsel, the date for service of objections was extended from January 23, 1998 to February 2, 1998 and the return date of the subpoena was extended from January 28, 1998 to February 9, 1998. On February 3, 1998, the Secret Service filed a motion to modify the subpoena with respect to both the time frame within which to reply and the scope of the subpoena at issue and has since filed a motion for protective order. Presently the Court turns its attention to these motions.

## II. *Analysis*

Rule 45 of the Federal Rules of Civil Procedure provides that "the court by which a subpoena was issued shall quash or modify the subpoena if it (i) fails to allow a reasonable time for compliance ... (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). In its motions for protective order and to modify the subpoena and to extend time within which to comply with the subpoena, the Secret Service raises several arguments under this rule. Accordingly, each argument will be considered separately by this court.

### A. *Motion to Extend Time to Respond to Request Number 1*

■ As stated, the subpoena at issue originally contemplated a return date of January 28, 1998 and this date was subsequently extended by agreement of counsel to February 9, 1998. The motion to extend time filed by the Secret Service indicates that for various reasons, production of documents responsive to request number 1 would not be possible until March 31, 1998. Specifically, the Secret Service contends that the task of copying the voluminous amount of material responsive to this request and a review of the materials for privileged or otherwise protected matter and

any redaction necessitated an extension of time within which to respond to the request. Moreover, the Secret Service believed that materials produced pursuant to congressional and/or grand jury subpoenas are likely to include substantial information protected under the Privacy Act, 5 U.S.C. § 552a. The materials would have to be reviewed for material covered under this Act and redacted accordingly. The Secret Service asserted that the production of responsive documents could be completed by March 31, 1998.

During the April 1, 1998 status conference, counsel for the Secret Service represented to this court that the disclosure of the information and documents sought pursuant to request number 1 had been completed by March 31, 1998. In light of the submissions of the Secret Service, the motion to extend is granted. The Secret Service has demonstrated to the satisfaction of this court that an extension of time within which to respond to the subpoena was warranted and the court concludes that March 31, 1998 was a reasonable date for the Secret Service to have responded.

### B. *Objections to Request Number 2*

The Secret Service seeks to modify the subpoena with respect to request number 2 and to have this request struck to the extent that it seeks grand jury subpoenas served upon the Secret Service on grounds that disclosure of this information would impede an ongoing criminal investigation. Mem. in Supp. of Mot. to Modify Subpoena Ex. F at 3. Request number 2 seeks copies of any subpoenas or voluntary agreements relating to the disclosure of FBI background investigation materials or summary reports produced pursuant to grand jury or congressional subpoena or in conjunction with any voluntary agreements with the Department of Justice or other investigatory agency including the Office of the Independent Counsel. Plaintiffs state that this request is necessary to provide a check on the good faith of the Secret Service in connection with the production of documents pursuant to request number 1. Pls.' Opp. to Mot. to Modify Subpoena at 5.

Plaintiffs contend that the Secret Service is not entitled to assert "law enforcement," "investigative," or "grand jury" privileges because it is not the investigative or law enforcement entity conducting the relevant criminal investigation. Moreover, plaintiffs argue that the Secret Service may not assert claims of privilege on behalf of the Office of the Independent Counsel or any other agency or entity and that the Secret Service should not be able to avoid compliance with the requests at issue merely because certain relevant documents have been turned over to the Office of the Independent Counsel or to a grand jury. Plaintiffs' contentions are correct.

■ Neither the granting of a protective order nor the modification of the subpoena with respect to request number 2 can be premised on the argument that compliance with the requests at issue on the basis that production may impede an ongoing criminal investigation. The Secret Service purports to have "asserted this privilege on behalf of the Independent Counsel to prevent interference with an ongoing law enforcement investigation." Reply Mem. in Supp. of Mot. to Modify Subpoena at 4. Furthermore, the Secret Service argues that "[t]he government has invoked the law enforcement privilege with regard to Request No. 2 to protect from disclosure information that might reveal the target, course, or scope of the Independent Counsel's investigation. Since that is precisely the sort of information that the law enforcement privilege is designed to protect from disclosure, the government properly objected to producing documents responsive to Request No. 2." *Id.* at 5.

In support of these arguments, the Secret Service cites *Dow Jones & Co. v. United States Dep't of Justice*, 880 F.Supp. 145, *vacated in part on other grounds*, 907 F.Supp. 79 (S.D.N.Y.1995). While the Secret Service is correct that this case upheld an assertion of law enforcement privilege by the Justice Department to prevent disclosure of information that would impede the Independent Counsel's investigation, that case is distinguishable. In *Dow Jones*, the plaintiffs sought disclosure, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of two reports, one prepared by the United States Park Police and the other by the Federal Bureau of Investigation, concerning the death of former deputy White House Counsel Vincent Foster on July 20, 1993 and a photocopy of a torn-up note apparently written by Foster and found in his briefcase several days after his death. On January 20, 1994, Attorney General Janet Reno appointed Robert Fiske independent counsel and his investigation included inquiry into the circumstances surrounding Foster's death. In response to plaintiffs' FOIA requests, the Department of Justice refused to release portions of the reports or copies of the note and claimed that Exemption 7(A) of FOIA, 5 U.S.C. § 522(b)(7)(A), permitted the withholding of these documents on the ground that disclosure could reasonably be expected to interfere with law enforcement proceedings. Based on Independent Counsel Fiske's assessment of the propriety of disclosing the reports, the Department of Justice asserted that "the public release of all or any part of the records at this time would be detrimental to the investigation currently being conducted by" Independent Counsel Fiske. 880 F.Supp. at 148.

■ The instant case differs from *Dow Jones* in several important respects. Perhaps the most important distinction that can be drawn between the two cases is that *Dow Jones* involved a FOIA request and that statute provides an exemption from disclosure that is broader than the law enforcement privilege asserted by the Secret Service in this case. Exemption 7(A) excludes from FOIA's mandatory disclosure requirements:

> records or information compiled for law enforcement purposes; but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings.

5 U.S.C. § 552(b)(7)(A). The government agency invoking this exemption must only identify a pending or prospective investigation and make a showing that release of the information about it could reasonably be expected to cause some articulable harm. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 57 L.Ed.2d

159 (1978) (indicating that the government must show how records "would interfere with a pending enforcement proceeding"); *Manna v. United States Dept. of Justice*, 51 F.3d 1158, 1164 (3d Cir.1995) ("To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm.").

In the instant case, the law enforcement or investigatory privilege specifically belongs to the entity conducting the investigation and must be asserted by this entity. A distinctive attribute of any privilege is that only the holder of the privilege has the ultimate power to assert the privilege.

Further distinctions can be drawn from the fact that in *Dow Jones*, the Department of Justice submitted declarations of Independent Counsel Fiske stating that public disclosure of the information at issue could severely hamper the Independent Counsel's ability to elicit untainted testimony. Indeed, the Department of Justice made a specific showing of how the ongoing investigation would be threatened by disclosure based on this declaration. No such declarations or affidavits have been filed by the government in this case.

The court is mindful of the need to refrain from interfering with any ongoing criminal investigation being conducted by the Office of the Independent Counsel or any other law enforcement agency. However, the argument set forth by the Secret Service is not sufficient to warrant the granting of a protective order or a modification of the subpoena.

In the instant case, the Secret Service has stated that the Independent Counsel advised the Justice Department that "disclosure of the subpoenas issued to the Secret Service regarding the FBI files matter would impede an ongoing law enforcement investigation." Reply in Supp. of Mot. to Modify Subpoena at 5. Additionally, the Secret Service states that "[s]hould the plaintiffs move to compel production of such materials ... the government will submit a declaration from the Independent Counsel explaining why disclosure of these materials will undermine its law enforcement investigation." *Id.* at n. 4. The court would welcome any such declaration by the Independent Counsel and would give it appropriate consideration should plaintiffs seek to compel production of documents which the Independent Counsel considers to be covered by the law enforcement or investigatory privilege.

The Secret Service also raises concerns regarding the legitimacy of plaintiffs' claims that the Secret Service should not "be permitted to avoid the production of documents in its possession, custody, or control that have been transferred to [the Independent Counsel], or others, in order to avoid their production to plaintiffs." Reply in Supp. of Mot. to Modify Subpoena at 6. Furthermore, the Secret Service states that it has produced all documents given to the Independent Counsel except as noted in the privilege log submitted to the court. The court's opinion is expressly limited to the issue of whether a protective order or modification of the subpoena is warranted based on an invocation of the law enforcement or investigatory privilege. The court reaches no conclusion on the adequacy or completeness of the Secret Service's compliance with plaintiffs' subpoena.

### C. Objections to Request Numbers 3–18

The Secret Service also asserts that the subpoena at issue should be modified to strike document request numbers 3–18. These requests seek documents relating to communications between entities or individuals and the Secret Service regarding the FBI files matter. The Secret Service contends that the information sought can only be compiled by conducting a manual search of all documents generated by the Secret Service since 1992. Furthermore, any responsive documents would then have to be reviewed to prevent disclosure of information that would undermine the protective mission of the Secret Service or implicate other privileges. In sum, the Secret Service argues that request numbers 3–18 would unduly burden the agency's limited resources and that the information sought in the requests is not relevant to the issues of class certification and scope of employment. Mem. in Supp. of Mot. to Modify Subpoena at 9–10.

During the April 1, 1998 status conference, counsel for the Secret Service represented to the court that all non-privileged documents responsive to these requests were produced by March 31, 1998 with a privilege log. Accordingly, it is unnecessary to modify this portion of plaintiffs' subpoena and the Secret Service's motion to modify is denied to this extent.

### D. *Objections to Request Number 19*

Document request number 19 seeks documents "which you have removed from the premises of the United States Government . . . before, during, or after your employment with the United States." The Secret Service asserts that plaintiffs have advised counsel for the Secret Service that the Secret Service need not respond to request number 19 and therefore, the subpoena should be modified to strike this request. Mem. in Supp. of Mot. to Modify Subpoena at 11. In a letter attached as an exhibit to plaintiffs' opposition to the Secret Service's motion to modify the subpoena, counsel for plaintiffs states

[W]e have agreed that [request number 19] need not be responded to by the Secret Service for the time being. Consequently, and without waiving Plaintiffs' rights to the underlying information, Plaintiffs' Request No. 19 is not at issue in terms of the production of documents required from your client by February 9, 1998, and we agree to revisit this request later, and to re-submit it in a reformulated fashion. We understand that you will then provide the responsive documents.

Pls.' Opp. to Mot. to Modify Subpoena Ex. 3 at 2. Furthermore, plaintiffs also state that "[p]laintiffs have not agreed to withdraw this request, but merely to revisit it later if necessary." *Id.* at 2.

In light of the submissions of the parties, it is the court's conclusion that plaintiffs have not withdrawn request number 19. Accordingly, the motion of the Secret Service to strike this request is denied.

### E. *Objections to Request Numbers 20–21*

Request number 20 seeks all documents relating to any "system of recording devices, whether audio or video" at the White House.

Request number 21 seeks documents "concerning or relating to the system for controlling access to the White House by any official, employee, detailee, resident, volunteer, intern, visitor, or guest." By letter dated February 2, 1998, plaintiffs stated that this request encompasses:

information, including technical manuals, sufficient to gain an understanding of the "information capture" and "information achieving" functions of the systems covered by these requests, as well as, of course, an identification of the systems themselves. In other words, the documents must permit us to understand *what* information is captured by these systems (including the physical locations where it is captured), *how* the information was captured (including the storage media used to record it), and *how* (*not whether*) the information so captured can be retrieved. This specifically includes information necessary to identifying how the retrieval, recovery, and/or reconstruction of so-called "erased" or "deleted" information can be accomplished.

Mem. in Supp. of Mot. to Modify Subpoena at 12, Ex. E at 2.

The Secret Service premises its request for a protective order on three separate grounds. The Secret Service argues that the production of documents sought in request numbers 20 and 21 is not relevant to the issues presented by plaintiffs in this case and would be unduly burdensome. Moreover, the Secret Service states that the requests set forth by plaintiffs encompass all of the technical specifications regarding the equipment that controls access to and security at the White House Complex. *Id.* at 12. In this regard, it is asserted that "[t]he compelling public interest in protecting the personal safety and security of the President, and the unique and highly sensitive nature of the duties of the Secret Service in providing that protection, bring the documents sought in Document Requests 20 and 21, and the testimony sought in the 30(b)(6) Deposition Notice, within the aegis of the common-law privilege for law enforcement investigatory files." Mem. in Supp. of Mot. for Protective Order at 8.

The initial hurdle that plaintiffs must overcome is the argument set forth by the Secret Service that the information sought by plaintiffs is irrelevant to any of the issues presented in this case. According to the Secret Service, absent some showing of relevancy, this information is simply not discoverable under the Federal Rules of Civil Procedure.

■ Under Rule 26(b) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). It is not disputed that "relevance" for the purpose of discovery is broadly construed. The Court of Appeals for the District of Columbia Circuit shed light on how broadly this term should be construed in *Food Lion, Inc. v. United Food and Commercial Workers Intl. Union*, 103 F.3d 1007, 1012 (D.C.Cir.1997). In *Food Lion*, the Court of Appeals indicated that "[n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." *Id.* (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure Civil* 2d § 2008, pp. 106–06 (1994)). *See also In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'") (quoting *Broadway & Ninety–Sixth Street Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y.1958)).

In the instant case, plaintiffs premise the relevancy of the discovery requests at issue on unfounded theories and speculation and the conclusion that "[p]laintiffs, and not the Secret Service or the ... Justice Department, should determine what discovery is necessary to prove their case." Pls.' Opp. to Mot. for Protective Order (April 10, 1998) at 4. Plaintiffs contend that discovery is necessary pertaining to White House recording systems based on an article published in *The New York Times. Id.* at 2. In this article, R. Emmett Tyrell, Jr., editor of *The American Spectator* and author of *The Impeachment of William Jefferson Clinton,* commented on his fictitious novel and stated that he had sources "who say that there has been a taping machine in the White House that is far more involved than the videotaping that we know they have done." Pls.' Opp. to Mot. for Protective Order (April 10, 1998) Ex. 2.

Plaintiffs also point to the Interim Report by the Committee on Government Reform and Oversight entitled *Investigation into the White House and Department of Justice on Security of FBI Background Investigation Files.* In that report, it is stated that Agent Cole of the United States Secret Service testified that when defendant Craig Livingstone spoke with Cole, Livingstone did not want to speak in his office. When Cole asked Livingstone if he thought his office was bugged, Livingstone simply stated that he did not think it was safe to talk in his office. Pls.' Opp. to Mot. for Protective Order (April 10, 1998) Ex. 3 at 94–95.

Plaintiffs assert that it is likely that defendants Livingstone, Marceca, and Nussbaum "used confederates among associated political operatives from the Clinton–Gore Campaign and the Democratic National Committee to shuttle in and out of the White House with documents from the FBI files, and other information protected by the Privacy Act." *Id.* at 3. Plaintiffs conclude that these individuals must have visited the White House and the Executive Office of the President to "pick-up and courier past the gates information gathered by insiders." *Id.* Accordingly, "[p]laintiffs seek ... to learn how such persons can be identified using the information sought in Plaintiffs' Request Numbers 20 and 21." *Id.*

Furthermore, plaintiffs allege that it is necessary to understand how the records compiled by the Secret Service can be retrieved and/or recovered because "it is very likely that key information may have been 'erased' or 'deleted' from the systems, perhaps pursuant to advance tips from FBI General Counsel Shapiro and others about the course of the FBI's own investigation

into these matters." *Id.* at 5. Plaintiffs surmise that "[a]ny one of [the] 'undeleted' or 'unerased' records may produce a 'smoking gun' which can foreshorten this case." *Id.* Plaintiffs also claim that the documents sought may identify who hired Craig Livingstone and for what purpose. *Id.* at 7.

█ Despite plaintiffs' claims to the contrary, nothing in discovery request numbers 20 and 21 bears any relevance to the issues in this case. It is highly unlikely that any of the documents or information sought by plaintiffs in these requests would shed any light on the alleged improper acquisition, use, and dissemination of the FBI files in this case or the issues of class certification or scope of employment.

As stated, request number 20 seeks all documents relating to any "system of recording devices, whether audio or video" at the White House and request number 21 seeks documents "concerning or relating to the system for controlling access to the White House by any official, employee, detailee, resident, volunteer, intern, visitor, or guest." It is simply inconceivable that the information sought bears any relevance to the issues in this case. The information sought would not reveal what documents, if any, individuals may have carried in or out of the White House or whether any individuals with access to the White House could be considered "confederates" or "political operatives from the Clinton–Gore campaign and the Democratic National Committee." Similarly, it is highly unlikely that information pertaining to any audio and video recording devices or systems of access to the White House would lead to admissible evidence pertaining to the issues of scope of employment or class certification.

The conclusion that the information and documents sought are irrelevant and unlikely to lead to admissible evidence on issues presented in this case becomes apparent when the actual discovery request on its face is examined. Plaintiffs seek a narrow class of documents that focus largely on the technical specifications of the security system employed at the White House. *See* Mem. in Support of Mot. to Modify Subpoena Ex. E (Klayman Letter) at 2 ("[T]he documents provided must permit us to understand *what* information is captured by these systems . . . how the information is captured . . . and *how* the information so captured can be retrieved."). While discovery into whether and when specific individuals may have visited the White House during the time period at issue in this law suit *may* be relevant, the manner in which the Secret Service controls this access is not. However, it is clear that plaintiffs' requests transcend the mere issue of entry and focus predominantly on technical and operational subject matter and capabilities of White House security.

The Secret Service has largely complied with the other requests for documents set forth by plaintiffs and there has been no showing that the Secret Service has attempted to stonewall plaintiffs in any way. The narrow spectrum of documents determined to be irrelevant to the issues in this case further eliminates any prejudice that plaintiffs may suffer as a result of this conclusion. Until such time as plaintiffs make some real showing of relevance beyond the speculation and conjecture currently relied on, the Secret Service's motion for protective order and to modify the subpoena is granted and the Secret Service will not be required to respond to request numbers 20 and 21.

### F. *Objections to Request Number 22*

Request number 22 seeks all documents which "refer or relate in any manner to the matter commonly known as 'Filegate.'" The Secret Service objects to this request as vague, unduly burdensome, and irrelevant. The Secret Service asserts that the burden should not be placed on the Secret Service, as a nonparty, to determine the precise contours of this document request.

█ Despite plaintiffs' claims to the contrary, this court agrees that request number 22 is impermissibly vague. The Secret Service should not be forced to speculate as to the what type or class of documents plaintiffs are seeking. Absent a narrowing or clarification of this request, the Secret Service is not required to comply with request number 22.

G. *The Secret Service's Request to Extend the Date by Which An Agency Designee Must Appear for Deposition Testimony*

The subpoena as originally served on the Secret Service included a notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure directing a designee of the agency to appear for deposition testimony on January 28, 1998, with the documents sought in the document request. According to the Secret Service, counsel for plaintiffs indicated that plaintiffs would prefer to obtain and review the documents before taking deposition testimony from an agency designee. Counsel agreed to extend the date by which an agency designee must appear for deposition to a date and time mutually acceptable to the plaintiffs and the Secret Service after production of the documents sought. The Secret Service sought to modify the subpoena to extend the date by which an agency designee would be required to appear for deposition testimony to a date and time mutually acceptable to plaintiffs and the Secret Service after March 31, 1998.

It is the opinion of this court that if it is determined that a designee must appear for deposition testimony, it is permissible for the deposition to be conducted after the date of this Memorandum and Order at a date and time mutually agreeable between plaintiffs and the Secret Service.

III. *Conclusion*

For the reasons set forth herein, the Secret Service's Motion for Protective Order and Motion to Modify Subpoena are DENIED in part and GRANTED in part as follows:

1. The Secret Service's Motion to Extend Time By Which the Secret Service Must Produce Responsive Documents is GRANTED, *nunc pro tunc*, as the Secret Service complied with the requests by March 31, 1998.

2. The Secret Service's Motion to Modify Subpoena with respect to request number 2 is DENIED.

3. The Secret Service's Motion to Modify the Subpoena to strike document request numbers 3–18 is DENIED.

4. The Secret Service's Motion to Modify Subpoena to strike document request number 19 is DENIED.

5. The Secret Service's Motion to Modify Subpoena to strike document request numbers 20 and 21 and Motion for Protective Order with respect to document request numbers 20 and 21 are GRANTED.

6. The Secret Service's Motion to Modify Subpoena to Strike document request number 22 is GRANTED.

7. The Secret Service's Motion to Modify Subpoena to Extend Date by Which an Agency Designee Must Appear for Deposition Testimony is GRANTED and an agency designee must appear for deposition testimony if necessary at a time and date mutually acceptable to the plaintiffs and the Secret Service after the date of this Memorandum and Order.

SO ORDERED.