Cara Leslie ALEXANDER, et al., Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court, District of Columbia.

Feb. 24, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for defendant Anthony Marceca.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion [374] to Compel Re–Designation of Witness on Surveillance Systems Under Fed.R.Civ.P. 30(b)(6) and for Attorneys' Fees and Costs. Upon consideration of plaintiffs' motion, defendant Executive Office of the President's opposition, and plaintiffs' reply thereto, the Court will DENY plaintiffs' motion without prejudice, as discussed and ordered below.

### I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. The instant dispute revolves around the deposition of John Dankowski, Director of White House Operations.

Dankowski was designated by defendant EOP to testify pursuant to FED.R.CIV.P. 30(b)(6) Rule 30(b)(6) states, in pertinent part, that:

> A party may in the party's notice and in a subpoena name as the deponent a ... governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.... This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

FED.R.CIV.P. 30(b)(6). The reasonableness of the testimony sought by plaintiffs is not in dispute. Thus, defendant EOP's duty to designate a suitable witness (or suitable witnesses) was triggered.

Although not disputed, the scope of the testimony sought merits some discussion, as it will bear upon the adequacy of defendant EOP's Rule 30(b)(6) designation. The Court addressed the proper scope of plaintiffs' Rule 30(b)(6) deposition notice in its April 13, 1998 Memorandum and Order denying defendant EOP's motion to quash. In that opinion, the Court described plaintiffs' deposition notice, in pertinent part, as follows:

> Deposition request 3 seeks to have a deponent testify regarding "the system of recording devices, whether audio or video, used to record sounds or pictures in any of the office, common, residential, and/or other areas of the White House and the entirety of the [EOP], including the Office of White House Counsel and the Office of the First Lady." ... Deposition request 8 seeks to have a deponent testify regarding "any recording, transcription, communication, printing, filing, and any and all recordation devices used by Hillary Rodham Clinton and others in the White House in their governmental, official, and/or allegedly private capacities."

*FBI v. Alexander*, C.A. 96–2123, Memorandum and Order at 13 (D.D.C. Apr. 13, 1998).

The Court ultimately denied defendant EOP's motion to quash the provisions at issue in plaintiffs' deposition notice. In doing so, the Court reasoned:

It is important to note from the outset that the [C]ourt has already modified plaintiffs' Notice to the extent that it seeks deposition testimony regarding matters outside the White House Office and prior to the relevant time period of January 1, 1992 and thereafter.... Plaintiffs state that they are seeking to know "in general terms, what kinds of systems are used and the capabilities of those systems, so that they can then know what types of evidence are likely to exist...." When combined with the [C]ourt's modifications explained above, plaintiffs' deposition request is reasonable.

*Id.* at 14. Moreover, in its May 4, 1998 Memorandum and Order, the Court ruled that any deposition on these topics would be confined to systems that may be operated within the White House Office or Office of Administration by entities other than the Secret Service. *FBI v. Alexander,* C.A. 96–2123, Memorandum and Order at 13, 186 F.R.D. 12, at 18 (D.D.C. May 4, 1998). Thus, the Court has clearly defined the proper scope of the plaintiffs' Rule 30(b)(6) deposition notice with regard to the issues currently in dispute.

Plaintiffs seek to elicit testimony on these audio or visual recordation devices because, in their view, evidence gleaned from such devices could be "highly probative of the partisan misuse of the FBI and government files" at issue in this case. Plaintiffs' Motion at 3. The theory behind this assertion appears to be that "traffic to and from [Craig] Livingstone's office is one of the likely ways to definitively trace what was done with information read and copied out of the physical FBI files." *Id.* at 4.[1]

Defendant EOP designated Dankowski as their Rule 30(b)(6) witness with regard to audio and video recordation systems, also referred to as "surveillance systems." His deposition was taken on June 23, 1998. The dispute currently before the Court involves whether defendant EOP complied with its duties under FED.R.CIV.P. 30(b)(6) and, if not, what the consequences of that dereliction should be.

II. *Analysis*

As stated above, defendant EOP does not dispute that plaintiffs have described the matter upon which testimony is sought with reasonable particularity, as required by Rule 30(b)(6). Once it is established that plaintiffs have met this initial burden, a number of duties were triggered that must be met by defendant EOP, as the party named in the notice. At the outset, and most obviously, defendant EOP must designate one or more persons to testify on the subject matter designated by plaintiffs. Defendant EOP met this burden by designating Dankowski. The dispute, however, centers around a number of concomitant duties involved in the preparation and proper designation of the witness.

 The Court recently addressed the topic of a party's duties in designating and preparing a witness under Rule 30(b)(6). *See FBI v. Alexander,* C.A. 96–2123, Memorandum and Order (D.D.C. Dec. 23, 1998). First, the deponent has a duty of being knowledgeable on the subject matter identified as the area of inquiry. *See United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996); *SEC v. Morelli,* 143 F.R.D. 42, 44–45 (S.D.N.Y.1992); *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 627, 630–32 (E.D.Mich.1989). Clearly, a deponent that does not know about the relevant subject matter is useless as a deponent at all. Second, the designating party is under the duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiffs. *See* FED. R.CIV.P. 30(b)(6) ("[T]he organization so named shall designate *one or more* officers, directors, or managing agents, or other persons who consent to testify on its behalf...." (emphasis added)); *Buycks–Roberson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 338, 343 (N.D.Ill.1995) ("Citibank seems to believe

---

1. It should be noted, however, that on the related issue of document production on the topic of surveillance systems, the Court found that "[i]t is simply inconceivable that the information sought bears any relevance to the issues in the case."

*Alexander v. FBI,* C.A. 96–2123, Memorandum and Order at 18, 186 F.R.D. at 20 (D.D.C. May 4, 1998). Nonetheless, the Court found that a Rule 30(b)(6) deposition would be appropriate when properly limited.

that it can satisfy Rule 30(b)(6) by producing a witness with only selected information to offer.... The Federal Rules and this Court do not countenance self-selecting discovery by either party."). Third, the designating party has a duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party. *See* FED.R.CIV.P. 30(b)(6) ("The persons so designated shall testify as to matters known or reasonably available to the organization."); *Protective Nat'l Ins. v. Commonwealth Ins.,* 137 F.R.D. 267, 277–78 (D.Neb.1989). Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know. Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry. *See United States v. Taylor,* 166 F.R.D. 356, 360 (M.D.N.C. 1996); *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989). All of these duties correspond to the ultimate underlying purposes of Rule 30(b)(6)—namely, preventing serial depositions of various witnesses without knowledge within an organization and eliminating "bandying," which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself. *See* FED.R.CIV.P. 30(b)(6) Advisory Committee Notes, 1970 Amendment.

Plaintiffs assert four arguments on why Dankowski was an inappropriate or non-exhaustive Rule 30(b)(6) witness with regard to the relevant non-Secret Service operated surveillance systems. First, plaintiffs contend that Dankowski is not qualified to testify on the relevant subject matter because he has no expertise in surveillance systems. Second, plaintiffs argue that Dankowski did not adequately prepare for his deposition because, for example, he did not inspect certain premises for surveillance equipment. Third, plaintiffs assert that Dankowski is not knowledgeable about surveillance systems because

he doesn't "know whether or not there's a department of the White House ... that's kept secret from other personnel that's in charge of surveillance." Dankowski Depo. at 47; Plaintiffs' Motion at 17. Fourth, plaintiffs claim that defendant EOP must designate another Rule 30(b)(6) witness on the topic of voice mail recordation because, in their view, Dankowski could not answer adequately the questions posed to him in that regard at the deposition. Upon review of the parties' memoranda and the deposition transcript, the Court rejects plaintiffs' first three arguments in full and plaintiffs' fourth argument in part.

■ First, Dankowski appears to be the appropriate person for defendant EOP to have designated on the topic of surveillance systems. Dankowski is the Director of White House Operations and is responsible for the purchases of all goods and services for the White House Office. If any non-Secret Service surveillance system was maintained in the White House Office, money, equipment, and services would be required for its use and upkeep. Plaintiffs adduce no evidence that any other person would be more qualified than Dankowski on the relevant subject matter. Therefore, plaintiffs' first argument must be rejected.

■ Second, the Court finds that Dankowski did adequately prepare for his deposition. In short, he had twelve years of experience in the White House Office, reviewed all of the spending obligation records for the White House Office dating back to 1992, and consulted with three separate individuals to obtain even more information with regard to matters such as staffing for potential surveillance systems. Although some of his preparations involved conversations with political appointees, a point that plaintiffs are fond of making, this fact does not belie Dankowski's proper designation. Dankowski appears to have asked questions of the proper people in order to receive answers; their political affiliation cannot be construed as making his testimony inherently incredible simply because some of these people are, of course, the same political affiliation as the President. Plaintiffs point to no other evidence that

would cast doubt upon Dankowski's preparation or testimony. Therefore, plaintiffs' contention that Dankowski was inadequately prepared fails.

■ Third, the Court expressly rejects plaintiffs' conjecture that a "secret department" may exist within the White House Office independently of the Secret Service that monitors employee activity. Plaintiffs point to absolutely no evidence to support such a claim, aside from the Nixon Presidential tapes incident. When this assertion is combined with plaintiffs' claim that they "are entitled to obtain testimony under oath ... stating categorically that there is no audio or visual surveillance system at the White House other than what may be operated by the Secret Service," defendant EOP's burden becomes insurmountable. Defendant EOP cannot be expected or required to prove the non-existence of surveillance equipment to an absolute certainty. Dankowski testified repeatedly that he has no personal knowledge of any such systems, has never seen anything that would indicate the existence of such systems, and has never heard anything to indicate that such systems exist. Defendant EOP has met its Rule 30(b)(6) burden in this regard by designating Dankowski to testify about matters known or reasonably known to defendant EOP. FED.R.CIV.P. 30(b)(6).

■ The plaintiffs' fourth argument—that Dankowski could not testify fully as to the voice mail system—merits closer attention. Although plaintiffs attempt to dismiss Dankowski's testimony with regard to voice mail in full, they clearly overstate their case in this regard. Dankowski testified competently that the White House Office has a voice mail system. Dankowski Depo. at 25. He stated that no other telephone recording devices existed. *Id.* at 26. The voice mail comes into individual mailboxes and accumulates up to a certain limit. *Id.* Once that limit is reached, the mailbox will not accept further messages. *Id.* Unopened mail is erased from the system in ten days and opened mail is erased after fifteen. *Id.* That voice mail system was set up in 1994. *Id.* at 27. Thus, Dankowski has a good understanding of the current voice mail sys-

tem in the White House Office, and he testified fully in that regard.

The one area, however, to which Dankowski could not testify was pre–1994 voice mail. In this context, the following exchange occurred:

[Plaintiffs' counsel:] When were you first cognizant of the fact that there was a voice mail system at the White House?

[Dankowski:] I believe it came in '94, if I recall correctly.

[Plaintiffs' counsel:] Was there a voice mail system in the White House before that?

[Dankowski:] Not that I recall.

[Plaintiffs' counsel:] You don't know one way or the other?

[Dankowski:] I do not.

. . .

[Plaintiffs' counsel:] So, consequently, you don't really know whether or not a prior system had a permanent voice mail retention system?

[Dankowski:] I do not know that.

*Id.* at 27–29. As stated above, the relevancy on this area of discovery is limited to the time period beginning in 1992. Thus, Dankowski could not testify as to the status of a certain type of audio recording system from the time period 1992–1994 (although he did state at one point that he does not believe one existed). This information, however unlikely to be helpful to plaintiffs, would be within the realm of discoverable evidence in this case. Thus, plaintiffs are entitled to answers to this limited subject matter.

As was the case with plaintiffs' motion to compel the re-designation of a witness on the White House Office Database (WhoDB), however, plaintiffs' need for answers to these questions does not warrant a new oral deposition at this juncture. Instead, as set out in the Court's Order below, plaintiffs shall be allowed to pose specific interrogatories and requests for production to defendant EOP on the limited subject matter of voice mail systems during the period 1992–1994. *See FBI v. Alexander,* C.A. 96–2123, Memorandum and Order, 186 F.R.D. 137 (D.D.C. Dec. 23, 1998) (providing plaintiffs the same relief in the context of the Jackson deposition); *Unit-*

**154**

*ed States v. Massachusetts Indus. Finance Agency,* 162 F.R.D. 410 (D.Mass.1995) (allowing the same remedy for incomplete testimony by a Rule 30(b)(6) witness when new oral deposition were not warranted). If, after they have received written discovery responses on this issue, a new Rule 30(b)(6) oral deposition is warranted, plaintiffs may again move to compel such a deposition at that time. Until then, however, plaintiffs' motion to compel defendant EOP to re-designate a Rule 30(b)(6) witness on the topic of White House Office audio and video recordation devices must be denied without prejudice.

 Because the Court will deny plaintiffs' requested relief in all respects except to the extent they are allowed to pose certain limited discovery requests, the only plausible ground for sanctions appears to be Dankowski's inability to testify as to the voice mail systems before 1994. As is clear from the discussion above, Dankowski was thoroughly prepared and testified fully on nearly all of plaintiffs' inquiries. He did have a duty to find out about the existence of voice mail from the period 1992–1994, since this would fall within the plain meaning of an audio recording device and be within the other limits imposed by the Court. But Dankowski's failure to be prepared in this limited aspect cannot be said to be a result of bad faith conduct. Dankowski did consult with the Deputy Assistant for Management and Administration on the general topic of voice mail and the more specific topic of potential voice mail backup systems. Based upon this preparation, the Court does not believe that Dankowski's inability to testify on one narrow issue rises to the level of being sanctionable. Therefore, plaintiffs' request for sanctions will be denied.

### III. *Conclusion*

For the reasons stated above, the Court HEREBY ORDERS that Plaintiffs' Motion to Compel Re–Designation of Witness on Surveillance Systems Under Fed.R.Civ.P. 30(b)(6) and for Attorneys' Fees and Costs is DENIED without prejudice. In this regard, the Court hereby ORDERS that:

1. Plaintiffs may submit to defendant EOP interrogatories and requests for pro-

duction in order to receive responses to questions posed by plaintiffs' counsel at Dankowski's deposition regarding voice mail systems in place at the White House Office during the time period 1992–1994.

2. Plaintiffs' request to take new Rule 30(b)(6) oral depositions on White House Office surveillance systems pursuant to a re-designation of such witnesses is DENIED without prejudice.

3. Plaintiffs' request for attorneys' fees and costs is DENIED.

4. Plaintiffs may renew their motion to compel a re-designation of a Rule 30(b)(6) surveillance system witness, for good cause shown, after they have received written discovery responses as provided for in this Order.

SO ORDERED.