## NOVARTIS PHARMACEUTICALS CORPORATION, Plaintiff,

v.

## ABBOTT LABORATORIES, Defendant.

### No. 00–784–JJF.

United States District Court,
D. Delaware.

Oct. 11, 2001.

Stuart B. Young, Josy W. Ingersoll, and John W. Shaw, Esquire of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Robert L. Baechtold, Nicholas N. Kallas, and Diego Scambia, Esquire of Fitzpatrick, Cella, Harper & Scinto, New York City, for Plaintiff.

Allen M. Terrell, Jr., Peter B. Ladig, and Dominick Gattuso, Esquire of Richards, Layton & Finger, Wilmington, Delaware. Of Counsel: Jeffrey I. Weinberger, Ted Dane, Andrea Weiss, and Sean P. Gates, Esquire of Munger, Tolles & Olson LLP, Los Angeles, California, for Defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Before the Court is Plaintiff's Motion To Compel Discovery (D.I.157), which the Court will grant in part and deny in part.

## I. PROCEDURAL HISTORY

On August 25, 2000, Plaintiff, Novartis Pharmaceuticals Corporation, ("Novartis"), filed this patent infringement action against the Defendant, Abbott Laboratories, ("Abbott"). (D.I.1). On May 14, 2001 the Court modified the November 2, 2000 Scheduling Order (D.I.45) and ordered that all fact discovery be completed by June 8, 2001. (D.I. 119). On August 14, 2001, Novartis filed the instant Motion To Compel Discovery. (D.I. 157).

## II. DISCUSSION

A. *To Compel The Deposition Of A 30(b)(6) Designee Regarding The Function Of Ingredients And Infringement Testing Of Abbott's Grengraf Product.*

Novartis moves to compel 30(b)(6) depositions regarding the function of the ingredients in Abbott's accused product, Grengraf, and Abbott's infringement testing of Grengraf. (D.I.158 at 14). In support of its

motion, Novartis contends that Abbott has not produced knowledgeable and prepared 30(b)(6) witnesses who are available for a full day of testimony for the noticed areas of inquiry. *Id.* Specifically, Novartis contends that Abbott designated two 30(b)(6) witnesses to testify on the day of their 30(b)(1) deposition and Novartis argues that it is entitled to a full day of testimony for each deposition. *Id.* at 14. Novartis also alleges that Abbott designated these witness on short notice, affording Novartis only one day of preparation for both the 30(b)(1) and 30(b)(6)depositions and that the designated witnesses were not prepared to testify on the 30(b)(6) areas of inquiry. *Id.* at 14–15.

In response, Abbott contends that the motion should be denied because Abbott produced two witnesses regarding Grengraf ingredients and Abbott's infringement testing of Grengraf that were prepared and willing to testify. (D.I.168 at 9). Specifically, Abbott contends that it produced witnesses for the noticed areas of inquiry but Novartis did not avail itself of the opportunity to depose the designees. *Id.* Furthermore, Abbott contends that each witness was prepared to testify on the discrete areas of inquiry and the depositions could have been completed in the time allotted. *Id.*

 The Federal Rules of Civil Procedure allow for a broad scope of discovery that is not limited to admissible evidence, but evidence that is reasonably calculated to the discovery of admissible evidence. Fed. R.Civ.P. 26(b)(1). Rule 30(b)(6) provides that after receiving a notice of deposition, the corporation should "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). Additionally, the deponent has a "duty of being knowledgeable on the subject matter identified as the area of inquiry." *Alexander v. Federal Bureau of Investigation,* 186 F.R.D. 148, 151 (D.D.C.1999). The Court can limit discovery if the parties seek duplicative or cumulative information, had ample time to get the information, or the burden outweighs the benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of an issue, and the

importance of the discovery in resolving the issue. *See generally* Fed.R.Civ.P. 26(b)(2).

 The Court finds that the deposition testimony regarding the ingredients of Grengraf and Abbott's infringement testing of Grengraf to be within the scope of Rule 26(b)(1) and therefore, discoverable. However, the Court finds that Abbott satisfied its burden under Rule 30(b)(6) and therefore, the Court will not compel the depositions requested. Abbott designated Dr. Lipari and Dr. Garren to testify regarding the noticed areas of inquiry and the witnesses appeared before Novartis' counsel willing to testify on behalf of the corporation. (D.I.168 at 9–11). Novartis refused to go forward with the depositions. *Id.* On this record, the Court concludes that Novartis had ample opportunity to obtain the discovery it now moves to compel within the discovery deadline, and therefore, the Court will deny Novartis' motion.

B. *To Compel The Deposition Of A 30(b)(6) Designee Regarding Particle Size Testing Of Abbott's Grengraf Product.*

 Novartis moves to compel a 30(b)(6) deposition regarding Abbott's particle size testing of Grengraf. (D.I.158 at 16). Novartis contends that the testimony is relevant and probative, but that Abbott has failed to produce a witness. *Id.* Novartis also contends that it has not elicited sufficient testimony from Dr. Norton and rejects Abbott's offer to be bound by Dr. Norton's prior deposition testimony. *Id.* Novartis contends that it has the right to depose Dr. Norton in an official capacity, even though he has already been deposed in an individual capacity. *Id.*

Abbott responds that its offer to be bound by Dr. Norton's testimony is sufficient. (D.I. 168 at 11). Abbott contends that Dr. Norton is the most knowledgeable person on the subject and is the person who would have been designated under 30(b)(6). *Id.* Finally, Abbott contends that to produce a 30(b)(6) designee regarding the particle testing would result in duplicative discovery. *Id.*

On the record presented, the Court concludes that Abbott's offer to be bound by Dr. Norton's testimony satisfies Abbott's obligation under Rule 30(b)(6) to produce a witness regarding particle size testing. The Court finds that Dr. Norton is the most knowledgeable witness in the subject area and would have been the designee for a 30(b)(6) deposition. Novartis has obtained over eighty pages of testimony and the Court concludes that another deposition of Dr. Norton would be cumulative to the testimony already procured. Accordingly, the Court will deny Novartis' motion to compel the deposition of a 30(b)(6) designee regarding particle size testing of Abbott's Grengraf product.

C. *To Compel a 30(b)(6) Designee Regarding The Physical Characterization Of The Particles Formed By Abbott's Grengraf Product Upon Dilution.*

Novartis seeks to compel a 30(b)(6) deposition regarding the physical characterization of the particles formed by Abbott's Grengraf product upon dilution. (D.I. 158 at 6–7). Specifically, Novartis contends that Abbott's untimely production of documents pertaining to the physical characterization of the particles resulting upon dilution prevented Novartis from deposing an Abbott designee on the subject. *Id.* at 17. Therefore, Novartis contends that a 30(b)(6) deposition regarding the physical characterization of the resulting particles is necessary. *Id.*

In response, Abbott contends that its testing to determine the physical characterization of the particles formed by Grengraf, and whether those particles are solid or liquid, is privileged as attorney work product. (D.I. 168 at 12). Abbott contends the testing was conducted at the request of counsel and therefore, the motion should be denied. *Id.*

■■■ The work product doctrine protects an attorney's statements, memoranda, correspondence, briefs, and mental impressions, obtained or prepared by an attorney in anticipation of identifiable litigation. *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury (Impounded),* 138 F.3d 978, 981 (3d Cir.1998).

The work product doctrine promotes the adversarial system by protecting material prepared by an attorney in anticipation of litigation and "enables attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3d Cir.1991). The party asserting work product protection has the burden of demonstrating that the disputed documents were prepared by or for the party or its attorney and prepared in anticipation of litigation or for trial. Fed.R.Civ.P. 26(b)(3). Furthermore, to satisfy that burden, the party must establish that the material is a document or tangible thing and prepared in anticipation of litigation for that party. A mere allegation that the work product doctrine is applicable is insufficient. 7 James Wm. Moore et al, MOORE'S FEDERAL PRACTICE § 26.70[5][a] (3d ed.1999).

■■■ After review of Abbott's submissions, the Court finds that Abbott has met its burden to demonstrate that the information regarding the physical characterization of the particles formed by Grengraf is protected by the work product doctrine. Abbott indicated that the testing was done at the request of its counsel (D.I.168 at 12); and Abbott has established that the testing was conducted in anticipation of identifiable litigation. Therefore, the Court will deny Novartis' motion to compel.

D. *To Compel Production Of Abbott's Complete Foreign Regulatory Files And Related Correspondence, As Kept In Their Ordinary Course Of Business.*

■■■ Novartis moves to compel production of Abbott's entire foreign regulatory files and related correspondence. (D.I.158 at 17). In support of its motion, Novartis contends that Abbott has not produced the relevant requested documents, but produced "a fragmented puzzle of scattered, incomplete and non-sequential documents." *Id.* at 8. Novartis also contends that it is entitled to all the foreign regulatory documents, even if the documents are duplicative. *Id.* In sum, Novartis contends that Abbott should be

compelled to produce its complete foreign regulatory filings, as the documents are kept in the ordinary course of business. *Id.*

In response, Abbott contends that it has produced all of the documents it submitted to foreign regulatory agencies, including applications and correspondence. (D.I.168 at 12). Abbott contends that it has produced all of the core foreign regulatory filings. *Id.* Abbott further contends that the documents Novartis' now seeks contain no new information, and therefore, are not relevant. *Id.* at 12–13. Abbott argues that to produce the documents requested would be burdensome and time consuming. *Id.* at 13.

Rule 26(b)(1) permits a broad scope of discovery. On the record presented, the Court is persuaded that Abbott has satisfied its burden under Rule 26(b)(1) to produce all relevant documents when it produced the "core foreign applications." The Court is persuaded that further production would be duplicative and cumulative of what Abbott has already produced and further production would be burdensome. Therefore, the Court will deny Novartis' motion.

### E. To Compel Production Of Abbott's Foreign Sales And Marketing Documents.

Novartis seeks the production of Abbott's foreign sales and marketing documents. Novartis contends that the sales documents should be produced because the documents will facilitate damages calculations, revealing the extent of Abbott's infringement. (D.I.158 at 19). Additionally, Novartis contends that the marketing plans and sales projections documents should be produced because the documents pertain to the determination of a reasonable royalty. *Id.* Novartis argues that anticipated foreign sales and profits are relevant because they are factors that Abbott would consider in a hypothetical licensing negotiation. *Id.*

In response, Abbott contends that the motion is untimely. (D.I.168 at 13). Specifically, Abbott contends that Novartis first requested these documents in January 2001, but as the case progressed, Novartis failed to pursue this avenue of discovery and did not request the documents until five weeks after the discovery cutoff. *Id.* Abbott argues that Novartis' damages expert did not profess a need for all of Abbott's foreign sales and marketing documents to prepare the expert report and therefore, the motion should be denied. *Id.* at 13–14.

The Court is persuaded that the foreign sales and marketing documents are relevant to the subject matter of the lawsuit. The Court finds that Abbott's production of only domestic sales and marketing documents is inadequate and does not satisfy its burden under Rule 26(b)(1) to produce all relevant, non-privileged documents. (D.I.168 at 7). Further, the Court concludes that the motion is not untimely. Since the Court is extending discovery for the limited purpose of addressing the issues presented in the parties' companion motions to compel (D.I.139; D.I. 157), the Court finds that the timeliness contention is unpersuasive. For these reasons, the Court will grant Novartis' motion to compel production of Abbott's foreign sales and marketing documents.

### F. To Compel Dr. Garren For Continued Deposition.

Novartis seeks to compel the production of Dr. Garren for further testimony regarding documents detailing the results of Abbott's particle size testing of Grengraf. (D.I.158 at 11). Novartis contends that Abbott's instruction to Dr. Garren not to answer questions regarding the Grengraf testing, on the basis of the work product doctrine, was improper. *Id.* Novartis contends that the work product doctrine does not apply because there is no indication that the pertinent document contains an attorney's mental impressions, the document was not identified as privileged on its face, and there is no indication, by date or otherwise, that the document was prepared in anticipation of litigation. *Id.* at 19–20. Alternatively, Novartis contends that Abbott waived any protection when it failed to object to Dr. Abdullah's detailed deposition testimony regarding the document. *Id.* at 20. Novartis also contends that any protection was waived when the pertinent document was used to prepare Dr. Garren for her deposition. *Id.* at 21. Finally, Novartis contends that the production of the

document was voluntary, not inadvertent, because the document was heavily redacted, indicating a thorough review and a deliberate decision to produce the document. *Id.* at 22. For all of these reasons, Novartis contends that further deposition testimony regarding the documents should be compelled. *Id.*

Abbott responds that further deposition testimony should not be compelled because the area of inquiry is protected by the work product doctrine, a protection that was not waived. (D.I.168 at 14–16). Abbott contends that the work product protection was not waived because production of the document was inadvertent and Abbott was not aware that the document was privileged when it was produced. *Id.* at 15. Abbott further contends that it took immediate steps to remedy the inadvertent disclosure by informing Novartis of the mistake and requesting that Novartis return the document. *Id.* Furthermore, Abbott contends that it only used the document to prepare Dr. Garren for her deposition so that Dr. Garren could confirm that the document reflected attorney work product. *Id.*

 The Court previously discussed the basic legal principles relevant to the work product doctrine. The Court of Appeals for the Third Circuit has held that the work product doctrine is not absolute in that a party may waive attorney work product protection by "inadvertent or unintentional disclosure of protected materials." *In re Grand Jury (Impounded)*, 138 F.3d at 981. To determine if a party has waived attorney work product protection with an inadvertent production, the court should consider the "steps taken by a party to remedy the disclosure and any delay in doing so." *Id.* Furthermore, the court should consider whether the party asserting the protection "pursue[d] all reasonable means to restore the confidentiality of the materials and to prevent further disclosures within a reasonable period." *Id.*

 The Court of Appeals for the Third Circuit, in *In re Grand Jury (Impounded)*, addressed the waiver of attorney work product protection in the context of inadvertent disclosure. 138 F.3d 978, 982 (3d Cir.1998). The Court found that the party asserting the protection waived attorney client privilege,

through inadvertent disclosure, when he failed to seek "judicial vindication of his assertion of privilege," although the opposing counsel was timely notified of the claim of protection and the protection was consistently asserted in subsequent communications. *Id.*

The Court finds that *In re Grand Jury (Impounded)* is distinguishable from the instant case. Upon discovery, Abbott immediately asserted the work product protection and demanded return of the document. Additionally, Abbott instructed its witness not to answer questions regarding the document, once Abbott was aware of the documents inadvertent disclosure, other than to acknowledge the document's privileged nature. The Court finds these circumstances distinguish the instant case from *In re Grand Jury (Impounded)*, cited by Abbott. Further, the Court finds that Abbott's use of the document to prepare Dr. Garren for her deposition was only to establish the privileged nature of the document, therefore, its use in preparing Dr. Garren cannot constitute waiver of the attorney work product protection. Because the Court concludes the document regarding the particle size of Grengraf upon dilution is protected by the work product doctrine, the Court will deny Novartis' motion to compel Dr. Garren for continued deposition.

### G. To Compel Dr. Norton For Continued Deposition.

 Novartis seeks to compel Abbott to produce Dr. Norton for additional deposition questions. (D.I.158 at 3). Novartis contends that Dr. Norton was improperly instructed not to answer questions regarding a telephone conversation about Abbott's characterization of the physical appearance of the particles formed upon dilution of the Grengraf product ("telephone conversation"). *Id.* at 23. Novartis contends that the instruction not to answer was improper because the telephone conversation was not protected by the attorney client privilege. *Id.* Alternatively, Novartis contends that Dr. Norton's voluntary disclosure about the subject matter of the telephone conversation constituted waiver of attorney-client privilege, and therefore,

Novartis contends that Dr. Norton should be produced for continued deposition. *Id.* at 24–25.

Abbott responds that Dr. Norton should not be required to appear for further testimony because Dr. Norton did not refuse to answer any of Novartis' questions. (D.I.168 at 16; D.I.169, Ex.6). Abbott contends that Novartis should have asked further questions about the telephone conversation at Dr. Norton's deposition so that Abbott could have decided whether or not to allow Dr. Norton to answer the questions. (D.I.168 at 16).

The Court finds that Novartis had an ample opportunity to examine Dr. Norton about the telephone conversation, and the Court finds that Dr. Norton did not refuse to answer any relevant questions. The appropriate time for Novartis to pursue this avenue of discovery was at Dr. Norton's deposition and without a record that supports the present application the Court must deny Novartis' motion.

## III. CONCLUSION

For the reasons discussed, the Court will enter an Order that grants Novartis' motion in part and denies the motion in part.

### *ORDER*

For the reasons discussed in a Memorandum Opinion issued with this Order, IT IS HEREBY ORDERED this 11 day of October 2001 that Novartis' Motion (D.I.157):

(1) To Compel The Deposition Of A 30(b)(6) Designee Regarding The Function Of Ingredients And Infringement Testing Of Abbott's Grengraf Product is *DENIED*.

(2) To Compel The Deposition Of A 30(b)(6) Designee Regarding Particle Size Testing Of Abbott's Grengraf Product is *DENIED*.

(3) To Compel a 30(b)(6) Designee Regarding The Physical Characterization Of The Particles Formed By Abbott's Grengraf Product Upon Dilution is *DENIED*.

(4) To Compel Production Of Abbott's Complete Foreign Regulatory Files And Related Correspondence, As Kept

In Their Ordinary Course Of Business is *DENIED*.

(5) To Compel Production Of Abbott's Foreign Sales And Marketing Documents is *GRANTED*.

(6) To Compel Dr. Garren For Continued Deposition is *DENIED*.

(7) To Compel Dr. Norton For Continued Deposition is *DENIED*.